| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------------X<br>JEREMIE RUTH RACHUNOW, AGEONICS<br>MEDICAL, P.C. and MEDROCK MEDICAL, P.C.<br><br>                                      Plaintiff,<br><br>          -against-<br><br>JEFFREY JAMIESON and ANNETTE JAMIESON,<br><br>                                      Defendants.<br>-------------------------------------------------------------------X | Case No. 20-cv-5627<br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

Plaintiffs, by their attorneys, VLOCK & ASSOCIATES, P.C., complains against the Defendants as follows:

### THE PARTIES

1.  Plaintiff JEREMIE RUTH RACHUNOW is an individual residing at 250 East 54th Street, Apartment 29B, New York, New York.  Plaintiff is also a licensed medical doctor in the State of New York.

2.  Plaintiff AGEONICS MEDICAL, P.C. is a professional corporation existing pursuant to the laws of the State of New York with a principal place of business of 109 East 36th Street, Ground Floor, New York, New York.  Plaintiff JEREMIE RUTH RACHUNOW is the sole owner and shareholder of Plaintiff AGEONICS MEDICAL, P.C.

3. Plaintiff MEDROCK MEDICAL, P.C. is a professional corporation existing pursuant to the laws of the State of New York with a principal place of business of 109 East 36th Street, Ground Floor, New York, New York. Plaintiff JEREMIE RUTH RACHUNOW is the sole owner and shareholder of Plaintiff MEDROCK MEDICAL, P.C.

4. Defendant JEFFREY JAMIESON is an individual residing at 14 Claremont Avenue, Little Ferry, New Jersey 07643. Upon information and belief, Defendant JEFFREY JAMIESON has been the husband of Defendant ANNETTE JAMIESON at all times relevant hereto.

5. Defendant ANNETTE JAMIESON is an individual residing at 14 Claremont Avenue, Little Ferry, New Jersey 07643. Upon information and belief, Defendant ANNETTE JAMIESON has been the wife of Defendant JEFFREY JAMIESON at all times relevant hereto.

## JURISDICTION AND VENUE

6. Jurisdiction over the subject matter of this action is properly in this Court pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship of the parties. As set forth with specificity above, Defendant is a citizen of New Jersey, and the Plaintiffs are citizens of New York. The amount in controversy herein exceeds the sum of $75,000.00.

7. Venue is pursuant to 28 U.S.C. § 1391, as the Plaintiffs reside in the Southern District of New York.

**FIRST CAUSE OF ACTION - FRAUD**

8. Plaintiff JEREMIE RUTH RACHUNOW ("Rachunow") is a medical doctor and sole owner of Plaintiffs AGEONICS, P.C. ("Ageonics"), and MEDROCK MEDICAL, P.C. ("Medrock"), which were registered to do business in the State of New York in 2008 and 2005, respectively.

9. Defendant JEFFREY JAMIESON ("Jeffrey") was hired as Manager of Plaintiffs Ageonics and Medrock to run the day-to-day affairs as well as perform certain services. Jeffrey was trusted and given full access to the books, records and bank accounts for Plaintiffs. Unfortunately, that trust was abused and Jeffrey committed fraud and misrepresented the books and records of Plaintiffs, and stole, converted and/or embezzled an enormous amount of money from the Plaintiffs.

10. At all times relevant herein, Jeffrey was, upon information and belief, a licensed chiropractor in the State of New York.

11. Rachunow was busy working as a physician tending to patients and was led to believe that Jeffrey was a trustworthy friend, employee and manager for her companies, Plaintiffs Ageonics and Medrock. However, nothing could be further from the truth.

12. Over several years, unbeknownst to Plaintiffs, Jeffrey had been committing fraud and stealing/embezzling a substantial amount of Plaintiffs' funds over several years.

13. Unbeknownst to Plaintiffs, during the period 2014-2017, Jeffrey stole from Plaintiffs' bank accounts approximately $742,550.00, which he, as manager, labeled as bonuses,

and which were improper, unauthorized and far in excess of the bonuses tendered to Rachunow who was the sole owner of Ageonics and Medrock.

14. Jeffrey also embezzled funds from Plaintiffs in the form of what he characterized on the books and records as "loan repayments" to himself directly in sum of $151,364.00 from 2014 to 2017. However, no such loan from Plaintiffs to Jeffrey ever existed.

15. Jeffrey also stole funds from Plaintiffs in the form of what he characterized on the books and records as "loan payments" to an entity he owned and operated, JMAJ Consulting, in the sum of $325,176.00 from 2014 to 2017. However, once again, no such loan from Plaintiffs to JMAJ Consulting ever existed and/or was discussed.

16. From 2014 to 2017, as manager of Plaintiffs, Jeffrey also improperly and illegally paid himself a salary in excess of Rachunow of $190,285.00.

17. Jeffrey, as manager of Plaintiffs, also paid his wife, Defendant ANNETTE JAMIESON ("Annette"), from the accounts of Plaintiffs for a "no-show job" in the total sum of $486.719.00 from 2012 to September 8, 2017.

18. Annette knowingly, intentionally and unlawfully took possession of the funds from Plaintiffs without authorization and with full knowledge that she had no right to the said funds.

19. Annette retained possession of the said funds in spite of the fact that she did not work for Plaintiffs and in spite of Plaintiffs' demand for the return of the said funds.

20. Jeffrey also embezzled funds from Plaintiffs in the form of checks written to himself and JMAJ Consulting from Plaintiffs' bank accounts the total sum of $51,356.00 from 2014 to 2017.

21. In addition to the above forms of conversion/embezzlement from Plaintiffs' accounts, unbeknownst to Plaintiffs, Jeffrey also paid his personal American Express Credit Card bills totaling $1,055,083.00 from 2014 to 2017 from Plaintiffs' accounts.

22. Jeffrey also paid for his own personal investments to American Funds Investment from Plaintiffs' accounts without any authorization or legal basis to do so in the total sum of $194,642.00 from 2014 to 2017.

23. Jeffrey also improperly withdrew $174,635.00 from Plaintiffs accounts from 2014 to 2017.

24. Jeffrey also improperly and illegally used Plaintiffs' accounts to pay for his clothing, groceries in New Jersey, personal expenses in New Jersey, dentist in New Jersey, sporting goods/memorabilia, liquor, adult websites, restaurants in New Jersey, and commuting from 2014 to 2017, which totaled approximately $200,000.00 in additional funds he stole from Plaintiffs.

25. Upon information and belief, Jeffrey also forged the signature of Rachunow and performed and/or purported to perform illegal procedures at Plaintiffs' offices.

26. In sum, between 2014 and 2017, Defendant JEFFREY JAMIESON intentionally, maliciously and fraudulently embezzled, stole and/or converted a total sum of not less than $3,520,380.00 from the Plaintiffs.

27. The above acts of fraud, embezzlement/conversion by Defendants occurred without Plaintiffs' knowledge or consent.

28. When Plaintiffs realized that there was fraud and stealing/embezzlement going on by Defendant and confirmed the same, Jeffrey was terminated in early 2018.

29. Jeffrey falsely and fraudulently held himself out to be a lawful and trustworthy manager and employee. He managed the Plaintiffs' books and records and concealed his improper conduct by making false entries and/or omissions in the records of Plaintiffs. However, as outlined above, he was intentionally misrepresenting to Plaintiff and stealing money for years.

30. Jeffrey intentionally made these false representations of material fact and concealment of material facts, with knowledge of their falsity, and/or recklessly and without reasonable grounds for believing the truth of such representations or concealments.

31. Plaintiffs reasonably and actually relied upon Jeffreys' false and fraudulent representations and/or concealments of material fact to their detriment.

32. As a direct and proximate result of Plaintiffs' reasonable reliance on Jeffrey's fraudulent conduct, Plaintiffs have been damaged as alleged herein in the amounts to be proven at trial, but not less than $3,520,380.00.

33. The conduct of the Defendants alleged herein was fraudulent, willful, wanton, intentional, oppressive and malicious, and thereby entitles Plaintiffs to punitive damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION - CONVERSION/EMBEZZLEMENT

34. Plaintiffs repeat and reallege each and every allegation set forth above as if more fully set forth hereinafter.

35. Plaintiffs had right, title and interest to the sums of money improperly taken by Defendants Jeffrey and Annette.

36. Defendants unlawfully and without authorization assumed and exercised control over the sums of money from Plaintiffs and excluded Plaintiffs from their rightful ownership.

37. Plaintiffs' right, title and interest to the sums of money taken by Defendants were superior to any purported rights asserted by the Defendants.

38. Plaintiffs demanded the return of the sums of money taken by the Defendants.

39. Notwithstanding the foregoing, Defendants intentionally retained and refused to refund the sums of money taken from Plaintiffs.

40. In spite of Plaintiffs' repeated demands, Defendants have intentionally refused to return the sums of money and/or property belonging to the Plaintiffs, which interferes with Plaintiffs' right to possession in derogation of Plaintiffs' rights.

41. As a direct and proximate result of Defendants' conduct, Plaintiffs have been deprived of access to and use of the sums of money and/or property taken by Defendants. Accordingly, Plaintiffs are entitled to the return of sums of money and/or property outlined above.

42. Defendants' conduct outlined above was willful and malicious.

43. Defendants were both aware that their conduct was contrary to the commonly accepted duties in the ordinary course of his relationship with Plaintiffs and would cause injury to Plaintiffs.

44. Defendants acted knowingly in depriving Plaintiffs of access to and use of the sums of money and/or property outlined above. Defendants' acts were willful, wanton, malicious and

oppressive and justify an award of punitive damages, in addition to compensatory damages in an amount to be determined at trial and a Judgment/Order for the return of the Plaintiffs' rightful property.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a. On the First Cause of Action, in a sum to be determined by the Court not less than $3,520,380.00, plus interest, together with punitive and exemplary damages by virtue of Defendants' willful and intentional tortious misconduct;

b. On the Second Cause of Action, in a sum to be determined by the Court not less than $3,520,380.00, plus interest, together with punitive and exemplary damages by virtue of Defendants' willful and intentional tortious misconduct; and

c. Such other and further relief as the Court deems just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: New York, New York
July 21, 2020

VLOCK & ASSOCIATES, P.C.
Attorneys for Plaintiffs
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 557-0020

By: *s/Steven Giordano*
Steven Giordano, Esq.