UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JEREMIE RUTH RACHUNOW, AGEONICS
MEDICAL, P.C., and MEDROCK MEDICAL,
P.C.,

                          Plaintiffs,

                    20-cv-5627 (PKC)

        -against-

                    OPINION
                    AND ORDER

JEFFREY JAMIESON and ANNETTE
JAMIESON,

                          Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Jeremie Ruth Rachunow, Ageonics Medical, P.C. ("Ageonics") and Medrock Medical, P.C. ("Medrock") bring two claims under New York law, asserting that defendants Jeffrey Jamieson and Annette Jamieson converted over $ 3.5 million from plaintiffs between 2014 and 2017. Defendants contend that plaintiffs' claims based on conduct that took place before March 19, 2017 are time-barred, and move to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. In addition, defendants urge that Rachunow is not a proper plaintiff and move to dismiss the claims brought by her. For reasons to be explained, defendants' partial motion to dismiss will be denied.

BACKGROUND

        Rachunow is a licensed medical doctor. (Compl. ¶ 1). She is the sole owner and shareholder of two medical practices—Ageonics and Medrock. (Compl. ¶¶ 2–3). Jeffrey Jamieson ("Jamieson") was employed as the manager of both Ageonics and Medrock. (Compl. ¶

9). He ran the day-to-day affairs of Ageonics and Medrock and was given full access to their books, records and bank accounts. (Compl. ¶ 9). Annette Jamieson ("Annette") is the wife of Jamieson. (Compl. ¶ 5).

The Complaint alleges that over the course of several years Jamieson made improper distributions of funds belonging to plaintiffs to himself or companies that he owned. (Compl. ¶ 12). In connection with these distributions, the Complaint alleges that Jamieson made false entries in plaintiffs' books and records. (Compl. ¶¶ 13–18). The Complaint alleges that Jamieson converted a total of $3,520,380 from plaintiffs between 2014 and 2017. (Compl. ¶ 32). Jamieson was terminated in 2018 after plaintiffs became aware of his conduct. (Compl. ¶ 35).

Plaintiffs allege that in 2014 and 2015, Jamieson paid himself $477,500 and $506,650, respectively, and recorded the distributions as "bonuses" to JMAJ Consulting in plaintiffs' books and records. (Compl. ¶¶ 14–15). Jamieson owned and operated JMAJ Consulting. (Compl. ¶ 17). Plaintiffs allege that Jamieson was not entitled to receive the bonuses. (Id.) The Complaint identifies eleven checks signed by Jamieson in 2014 and 2015 that plaintiffs allege constituted improper payments. (Compl. ¶¶ 14–15). It asserts that Jamieson made additional improper distributions totaling $1,050,650 for 2016 and $258,750 for 2017. (Compl. ¶ 15).

The Complaint alleges that Jamieson paid himself $151,364 and improperly labeled the distributions as "loan repayments" in plaintiffs' books and records. (Compl. ¶ 16). It identifies eight checks signed by Jamieson for such loan repayments between 2014 and 2017. (Id.) Additionally, plaintiffs allege that Jamieson signed seven checks made payable to JMAJ Consulting in the total amount of $325,176 between 2014 and 2017 and entered the distributions

2

as "loan repayments." (Compl. ¶¶ 17–18). Plaintiffs contend that no loans existed between them and Jamieson or JMAJ Consulting. (Compl. ¶¶ 16–17).

Under the payment arrangement between Jamieson and plaintiffs, Jamieson was not permitted to "make more money than [p]laintiff Rachunow." (Compl. ¶ 19). The Complaint alleges that Jamieson made salary payments to himself between 2014 to 2017, which exceeded that paid to Rachunow by the sum of $190,285. (Compl. ¶¶ 19–20).

The Complaint further alleges that Jamieson paid his wife, Annette, a total of $486,719 from plaintiffs' accounts between 2012 and September 8, 2017. (Compl. ¶ 21). It asserts that the payments to Annette were for "no show jobs." (Compl. ¶¶ 22–23).

Lastly, the Complaint alleges that from 2014 to 2017 Jamieson made unauthorized distributions from plaintiffs' accounts to pay his personal credit cards bills totaling $1,055,083, fund personal investments totaling $194,642 and pay other personal expenses totaling $200,000. (Compl. ¶¶ 26–29).

On July 21, 2020, plaintiffs filed the initial complaint in this action. (Compl. ¶ 1). Defendants submitted a pre-motion letter seeking to dismiss the initial complaint and plaintiffs were subsequently granted leave to amend. (Minute Entry dated October 8, 2020). Plaintiffs filed their amended complaint on October 22, 2020 (the "Complaint"). (Doc 11). The Complaint brings claims of fraud and conversion under New York law.[1]

---

[1] Plaintiffs' second claim purports to bring a claim for "Conversion/Embezzlement." (Compl. at 9). There is no civil cause of action under New York law for embezzlement. See Bryant v. Commissioner of Soc. Sec., 14-cv-5764, 2015 WL 6758094, at *6 (S.D.N.Y. Nov. 5, 2015) (Swain, J.) (citing Cohain v. Klimley, 08-cv-5047, 2011 WL 3896095, at *4 (S.D.N.Y. Aug. 31, 2011) (Gardephe, J.) and Montalvo v. J.P. Morgan Chase & Co., 4221/09, 2009 WL 4893939, at *6 (N.Y. Sup. Ct. Dec.18, 2009)). The Court will construe the claim as alleging the tort of conversion.

RULE 12(b)(6) STANDARD

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations, which are accepted as true, and "determine whether they plausibly give rise to an entitlement to relief." Id. at 678–79. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

A defendant may assert a statute-of-limitations defense "in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008). "Timeliness is 'material when testing the sufficiency of a pleading.'" Id. (quoting Rule 9(f), Fed. R. Civ. P.)

DISCUSSION

    A. Rachunow Is a Proper Plaintiff at this Stage of the Litigation.

As an initial matter, defendants move to dismiss all claims brought by Rachunow in her individual capacity. According to defendants, the Complaint asserts that Jamieson diverted funds solely from Ageonics and Medrock and that any claim regarding such funds therefore belongs to these corporations, and not Rachunow as their sole owner and shareholder.

The Complaint does not specify which plaintiff or plaintiffs were the owner of the allegedly diverted funds. Instead, it refers collectively to "[p]laintiffs' books and records" and

4

"[p]laintiffs' bank accounts."  (See, e.g., Compl. ¶¶ 13–14, 25–29).  Although the Complaint lacks specificity as to the identity of the owner of the funds, Rachunow has stated a plausible claim for relief in her individual capacity.  The Complaint alleges that Rachunow is the sole shareholder and owner of Ageonics and Medrock.  (Compl. ¶¶ 2–3).  It asserts that Jamieson was hired as the manager of those entities and given access to the bank accounts and books and records of all plaintiffs, including Rachunow.  (See, e.g., Compl. ¶¶ 13–14, 25–29).  It alleges a payment arrangement by which Jamieson "was not to make more than [p]laintiff Rachunow." (Compl. ¶ 19).  Drawing all reasonable inferences in Rachunow's favor, the Complaint alleges that the funds could have been diverted from Rachunow personally.  The Court concludes that Rachunow is a proper plaintiff at this stage of the litigation.

  B. Plaintiffs' Claims Are Governed by New York's Three-Year Statute of Limitations.

In a diversity action, a federal court applies the statute of limitations of the forum state.  See Stuart v. American Cyanamid Co., 158 F.3d 622, 626 (2d Cir. 1998) ("Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations.").  Under New York law, "[t]he time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed."  CPLR 203(a).

New York has a three-year statute of limitations for a claim of conversion.  CPLR 214(3).  The statute of limitations begins to run at the time the conversion takes place, rather than the time of discovery.  Vigilant Ins. Co. of Am. v. Housing Auth. of the City of El Paso, Tex., 87 N.Y.2d 36, 44–45 (1995); see also Grosz v. Museum of Modern Art, 772 F. Supp. 2d 473, 481–82 (S.D.N.Y. 2010) (McMahon J.) ('Under New York law, the statute of limitations for

5

conversion and replevin automatically begins to run against a bad faith possessor on the date of the theft or bad faith acquisition—even if the true owner is unaware the chattel is missing."). Moreover, conversion claims are not continuing torts. See King v. Fox, 28 Fed. App'x 95, 98 (2d Cir. 2002) (declining to apply continuing tort theory to action for conversion and noting that in Sporn v. MCA Records, 58 N.Y.2d 482 (1983), "the New York Court of Appeals limited the doctrine of continuing tort to claims of trespass, excluding those of conversion").

Defendants urge that plaintiffs' fraud claim is merely incidental to their conversion claim and therefore the shorter statute of limitations for a claim of conversion should apply to both claims. Typically, the statute of limitations for a New York "action based upon fraud" is the longer of either "six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." CPLR 213(8).

"'In applying a Statute of Limitations it is basic that one look[s] to the essence of plaintiff's claim and not to the form in which it is pleaded.'" Corcoran v. N.Y. Power Auth., 202 F.3d 530, 544–45 (2d Cir. 1999) (quoting State v. Cortelle Corp., 38 N.Y.2d 83 (1975)). "Where a plaintiff brings both fraud and conversion claims, however, New York courts will not apply the longer limitation if the fraud claim is merely incidental to that for conversion." Marketxt Holdings Corp. v. Engel & Reiman, P.C., 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (Kaplan, J.) (citing Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 663 (S.D.N.Y. 2007) and Powers Mercantile Corp. v. Feinberg, 109 A.D.2d 117, 119 (1st Dep't 1985)).

A fraud claim "is merely incidental to the conversion claim" if the "gravamen of the wrong is the alleged diversion of funds." Car Park Sys. of N.Y. Inc. v. Ull, 154 A.D.3d 444, 444 (1st Dep't 2017) (citing Powers Mercantile, 109 A.D.2d at 119–21). Under New York law,

6

"[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49–50 (2006). "Whereas conversion claims seek compensation for theft, fraud claims seek to remedy damage caused by deception itself." Marketxt Holdings, 693 F. Supp. 2d at 395. Accordingly, a claim of common law fraud in New York requires "a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." Pasternack v. Laboratory Corp. of Am. Holdings, 27 N.Y.3d 817, 827 (2016) (alteration in original) (internal quotation marks omitted).

In determining whether a fraud claim is incidental to a separate claim, courts also look to whether the measure of relief requested is identical for both claims. Marketxt Holdings, 693 F. Supp. 2d at 395; see Corcoran, 200 F.3d at 545 ("A fraud action is not incidental only when: (1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are distinct from the injuries caused by the alternate claim." (citing Harkin v. Culleton, 156 A.D.2d 19 (1st Dep't 1990)); Powers Mercantile, 109 A.D.2d at 121 ("At most, they represent the means of accomplishing the alleged misappropriation and, as such, are only an incident of that wrong.").

The Court concludes that plaintiffs' fraud claim is merely incidental to their claim of conversion. The gravamen of the allegations pled in the fraud claim is that Jamieson diverted funds belonging to plaintiffs' between 2012 and 2017. (Compl. ¶¶ 14, 16–17, 21, 25–29). The Complaint alleges that Jamieson made false entries in plaintiffs' books and records when recording such distributions. But these false entries were a means to conceal the conversion of

7

funds and not a means to take possession wrongfully of the funds. In seeking to plead a fraud claim, the Complaint does not allege with particularity that plaintiffs relied on any specific misrepresentations or material omissions made by Jamieson. (See, e.g., Compl. ¶¶ 9, 11, 38–39). Both claims seek the same damages consisting of the funds that Jamieson allegedly diverted from plaintiffs. (Compl. ¶ 32 (fraud claim); Compl. ¶¶ 43–45 (conversion claim)). Plaintiffs allege no damages for fraud that are independent of their conversion claim, and "[i]ndeed, without the alleged misappropriation[,] plaintiff would have no claim at all." Powers Mercantile, 109 A.D.2d at 121. As Judge Kaplan observed in concluding that a fraud claim was incidental to a conversion claim, it was "the theft itself—not the deception that was in service to, and logical incident of, that theft—that form[ed] the basis for all of plaintiff's claims." Marketxt Holdings, 693 F. Supp. 2d at 396. Accordingly, the Court will apply the three-year statute of limitations to both plaintiffs' fraud and conversion claims.

Based on the face of the Complaint, defendants' conduct occurred principally between 2012 and 2017, placing certain instances of alleged conversion outside of the three-year limitations period. Because a conversion claim is measured from the date of injury and not the date of discovery, Vigilant Ins. Co., 87 N.Y.2d at 44–45, the limitations period began to run on the date that the alleged conversion took place.

C. Applying the Statute-of-Limitations to Plaintiffs' Claims.

The initial complaint in this action was filed on July 21, 2020. (Doc. 1). The parties agree that Governor Cuomo's March 20, 2020 Executive Order No. 202.8 in response to the COVID-19 pandemic tolled plaintiffs' claims.[2] The Court therefore deems plaintiffs' claims

---

[2] https://www.governor.ny.gov/news/no-2028-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (last accessed Apr. 27, 2021). The Governor's Executive Order No. 202.67 announced that the tolling of statute of limitations would end on November 3, 2020. https://www.governor.ny.gov/news/no-20267-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (last accessed Apr. 27, 2021).

8

interposed as of March 20, 2020, and concludes that such claims are barred to the extent they allege that the conversion took place on or before March 19, 2017.

On a Rule 12(b)(6) motion, a defendant may assert a statute-of-limitations defense when it appears on the face of the complaint. Staehr, 547 F.3d at 425. The Complaint alleges that certain conduct occurred after March 19, 2017. (Compl. ¶ 16 (alleging checks signed by Jamieson on March 23, 2017, April 10, 2017 and May 26, 2017)). Accordingly, plaintiffs' claims for conversion based on these transfers of funds are timely.

At certain points, the Complaint does not provide an exact date when the alleged conversion took place, and instead provides only a year or date range. Plaintiffs allege that certain wrongful transfers took place from "2012 to September 8, 2017," i.e., a date after March 19, 2017 (Compl. ¶ 21). Similarly, they assert that certain conduct took place "in 2017," which necessarily includes dates that would be timely under the limitations period. (Compl. ¶¶ 15, 16, 18, 20, 22). Other transfers were alleged to occur from "2014 to 2017," (Compl. ¶¶ 13, 15, 16, 17, 19, 25–29, 32), which due to the imprecise pleading of dates, leaves the Court unable to determine if this includes conduct that took place during 2017 and therefore could be timely.[3] At the motion to dismiss stage, where a statute of limitations defense must appear on the face of the complaint and, as discussed below, plaintiffs have pled facts to support their equitable estoppel claim, the Court does not need to resolve the issues that arise from plaintiff's inconsistent pleading of dates. Defendant is not foreclosed from asserting a statute-of-limitations defense at trial.[4]

---

[3] Cf. Time, Black's Law Dictionary (11th ed. 2019) ("2. A point in or period of duration at or during which something happens or is alleged to have occurred.").
[4] The Complaint alleges that Jamieson "forged the signature of Rachunow, including, but not limited to forging her signature on insurance Genworth beneficiary designation forms making Annette a beneficiary on or about May 18, 2018." (Compl. ¶ 18). Although it appears that plaintiffs do not claim damages related to the forgery, defendants have not moved to dismiss on these grounds. Since the alleged conduct took place in 2018, this claim is timely.

D. <u>Plaintiffs Plead Facts to Support a Claim of Equitable Estoppel.</u>

Plaintiffs urge that the Court should deem its action timely based on principles of equitable estoppel. In raising this argument, plaintiffs have "the burden to adequately plead facts which, if proven, would establish the existence of an equitable estoppel." <u>Paterra v. Nationwide Mut. Fire Ins. Co.</u>, 38 A.D.3d 511, 512 (2d Dep't 2007) (quotation marks and alteration omitted); <u>see also</u> <u>MBI Int'l Holdings Inc. v. Barclays Bank PLC</u>, 151 A.D.3d 108, 117 (1st Dep't 2017) (stating that plaintiffs "bear the burden" of establishing a claim of equitable estoppel); <u>Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG</u>, 234 F. Supp. 3d 526, 539 (S.D.N.Y. 2017) (Schofield, J.) ("On a motion to dismiss, in order to save a facially barred claim, a plaintiff must come forward with facts that would show equitable estoppel."). Moreover, "it is well established that in diversity cases state law governs not only the limitations period but also the commencement of the limitations period." <u>Cantor Fitzgerald Inc. v. Lutnick</u>, 313 F.3d 704, 709 (2d Cir. 2002); <u>Thea v. Kleinhandler</u>, 807 F.3d 492, 501–02 (2d Cir. 2015) (applying California's equitable estoppel law in a diversity action).[5]

Under New York law, courts apply equitable estoppel "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filling a timely action." <u>Zumpano v. Quinn</u>, 6 N.Y.3d 666, 674 (2006) (internal quotation marks omitted). To rely on the doctrine, a plaintiff must allege an act of deception, "separate from the ones for which they sue, on which an equitable estoppel could be based." <u>Corsello v. Verizon</u>, 18 N.Y.3d 777, 789 (2012). The New York Court of Appeals clarified that equitable estoppel was available in its earlier decision in <u>General Stencils v. Chiappa</u>, 18 N.Y.2d 125, 127–28 (1966), a case involving thefts by a bookkeeper, because the complaint "alleged both the tort that was the basis of the

---

[5] To the extent the parties rely on cases applying principles of "equitable tolling" under the federal common law, (Opp. at 9–10; Reply at 2–3), such arguments are without merit.

action and later acts of deception by which the defendants concealed their wrongdoing." Corsello, 18 N.Y.3d at 789; accord Zumpano 6 N.Y.3d at 674. But "in cases where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed [the Court of Appeals has] held that the defendants were not estopped from pleading a statute of limitations defense." Corsello, 18 N.Y.3d at 789. Lastly, a plaintiff "must demonstrate reasonable reliance on the defendant's misrepresentations." Zumpano, 6 N.Y.3d at 674.

At the motion to dismiss stage, plaintiffs plausibly allege facts that support their claim of equitable estoppel. The Complaint alleges that Jamieson converted money from plaintiffs and subsequently recorded false entries in plaintiffs' books and records. The acts of concealment, the allegedly false entries, were "subsequent and specific actions" done to conceal Jamieson's wrongdoing. Zumpano, 6 N.Y.3d at 674. Plaintiffs further assert that Jamieson took their books and records to conceal the diversion of assets. (Compl. ¶ 34). The Complaint plausibly alleges Jamieson's conduct related to plaintiffs' books and records prevented them from discovering the conversion and filing a timely action. General Stencils, 18 N.Y.2d at 127–28.

Viewed in the light most favorable to plaintiffs, the Complaint plausibly alleges reasonable reliance on Jamieson's misrepresentations in plaintiffs' books and records. According to the Complaint, plaintiffs discovered Jamieson's conduct and terminated him some time in 2018. (Compl. ¶ 34). Rachunow, as the owner and sole shareholder of Ageonics and Medrock, plausibly had access to and reviewed plaintiffs' books and records in which Jamieson made false entries to conceal the conversion.

11

The Complaint plausibly alleges facts that could equitably estop defendants from asserting a statute of limitations defense. At trial, plaintiff will have the burden of establishing their claim of equitable estoppel.

CONCLUSION

Defendants' partial motion to dismiss is DENIED. (Doc 15). The Clerk is directed to terminate the motion.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
May 11, 2021